IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA SCOTT | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 06-2541 |
| | : | |
| MICHAEL J. ASTRUE[1] | : | |
| Commissioner of Social Security | : | |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                 **June 12, 2007**

Barbara Scott asks this Court to reverse the Commissioner's denial of her claim for two years of Social Security disability payments.  Because I find the Administrative Law Judge (ALJ) properly weighed the medical evidence and made a decision supported by substantial evidence, I will adopt the well-reasoned Report and Recommendation of U.S. Magistrate Charles B. Smith and deny Scott's request for review.

## FACTS

Scott is a 61-year old woman who applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, in January 2003, alleging disability since November 2002 as a result of diabetes, asthma, high blood pressure, sleep apnea, a heart murmur, and arthritic problems with her right shoulder and hand.  The state agency denied her application on April 11, 2003.  Scott restated her onset date as June 24, 2002 during a hearing before an Administrative Law Judge (ALJ) on January 20, 2004.  In addition to Scott, who was represented by counsel, the ALJ

_____

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Michael J. Astrue substitutes former Commissioner Jo Anne B. Barnhart, as the defendant in this suit.  Fed. R. Civ. Pro. 25(d)(1).

1

heard testimony from a medical expert. The ALJ denied Scott's claim, but the Appeals Council remanded the case to the ALJ to (1) obtain updated treatment records, (2) give further consideration to Scott's maximum residual functional capacity, and (3) compare Scott's residual functional capacity to her past relevant work. The ALJ heard a medical expert testify, but Scott, who appeared with counsel, did not testify. On February 22, 2005, the ALJ found Scott disabled as of April 14, 2004, as a result of renal failure, but not disabled prior to that period. The Appeals Council denied Scott's request for review on May 12, 2006, making the ALJ's decision final.

After high school, Scott received vocational training in business administration and nursing/phlebotomy. She has past relevant work experience as a real estate clerk for the Board of Revision of Taxes for the City of Philadelphia, where she worked until November 2002. Scott's primary care physician, noted in May 2001 Scott had developed hypertension, insulin-dependent diabetes mellitus, diabetic retinopathy and glaucoma, degenerative disk disease, early diabetic neuropathy, and obesity. The physician counseled Scott to eat better and to lose weight. On follow up visits in 2001, Scott's doctor noted additional diagnoses of asthmatic cough, tendonitis, high cholesterol, right knee problems, and edema in both legs. Scott was hospitalized for three days in October 2001 with a complaint of vertigo, which the attending physician suspected was related to hypoglycemia. She was diagnosed with diabetes mellitus with possible hypoglycemia, congestive heart failure, hypertension, and asthma and was treated with medication as an outpatient. In April 2002, Scott's physician re-emphasized her need to maintain proper diet and exercise.

In July 2002, Scott visited Gerald Phelan, M.D., her new primary care physician. In August, Scott failed to complete a pulmonary function exam, and the result was found unreliable to determine the cause of a wheeze. In September 2002, Dr. Phelan ordered an MRI of her lumbar spinal canal and found a mild disc bulge at L3-L4 and L4-L5 levels, but no significant spinal

stenosis or disc herniation.  In October 2002, an ophthalmologist diagnosed Scott with background diabetic retinopathy and cataracts and told Scott she needed to maintain strict blood sugar control and she would see her in one year.  A sleep study showed Scott had mild obstructive sleep apnea. The doctor recommended a long-term trial on nasal CPAP and weight reduction.  In January 2003, a cardiologist diagnosed Scott with dyspnea and diaphoresis with a history of congestive heart failure, noting she had no recent symptoms and she was not currently taking any medication for congestive heart failure.  She recommended a 2-D Echo exam and a stress test.

On January 22, 2003, Dr. Phelan reported to the Pennsylvania Public School Employees' Retirement System (PSERS) Scott was unable to perform her job because of her type II diabetes mellitus, high blood pressure, asthma, sleep apnea, spinal stenosis, gastro-esophageal reflux, congestive heart failure, and hyperlipidemia.  On March 31, 2003, PSERS approved Scott for disability benefits effective April 1, 2003 based on a retirement date of February 28, 2003.

In February 2003, a stress test revealed poor exercise tolerance with a hypertensive response, but Scott showed no chest pain.  Imaging showed an anterior defect with partial redistribution suggesting ischemia.  In March 2003, Scott had a check-up with Dr. Phelan and complained of rib pain on both sides.  He noted she had congestive heart failure, high blood pressure, hyperlipidemia, and degenerative disc disease.

A month later, Scott underwent a disability exam with Harvey Azarva, M.D. relating to her Social Security application.  Scott complained of lower back pain on a daily basis for a year.  Dr. Azarva noted no history of back trauma or fractures existed, no evidence of spinal stenosis or disc herniation, and a normal MRI scan.  Her second complaint was shortness of breath, which had lasted about two to three years.  Dr. Azarva stated Scott could climb a flight of stairs before becoming short of breath.  Scott stated she had orally-controlled diabetes for the last fifteen years, a history

of asthma, and obstructive sleep apnea.

Dr. Azarva noted Scott's physical exam was normal, except for a finding of obesity and edema. She exhibited positive straight leg raising bilaterally and decreased deep tendon reflexes in her arms and legs. Dr. Azarva also noted Scott had normal motor strength in her upper and lower extremities and her gait was normal, albeit slow. He concluded Scott had congestive heart failure, hypertension, diabetes, obstructive sleep apnea, rare asthma, and chronic low back syndrome due to degenerative joint disease.

Scott also followed up with the cardiologist, who recommended diagnostic catheterization because she could not rule out coronary disease from the stress test. The cardiologist found mildly thickened mitral valve leaflets, top normal left atrium, and normal right-sided chambers, with a suggestion of possible pulmonary hypertension, perhaps from her dyspnea.

The same month, Gerald Gryczko, M.D., a state agency doctor, reviewed Scott's records and completed a Physical Residual Functional Capacity Assessment. He believed Scott could occasionally and frequently lift up to ten pounds, could stand/walk at least two hours in an eight hour day, and was unlimited in pushing and pulling. He stated she could occasionally climb ramps or stairs, balance, stoop, kneel and crouch, and should never climb ladders, ropes or scaffolds, or crawl due to her lumbar syndrome. He also found Scott should avoid exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, and poor ventilation. He found no manipulative, visual, or communicative limitations. He concluded Scott was only partially credible as she was mobile and able to use public transportation, could climb five to six steps non-stop, and could use her hands for manipulation.

The next month, Scott visited her physician, Dr. Phelan, with complaints of daily shortness of breath with rib pain and back pain. Six months later, in November 2003, Scott went to the

emergency room complaining of pain and swelling of her left knee.  An x-ray of the knee showed degenerative arthritis, and the doctor instructed Scott to rest and take Tylenol as needed.

Between Scott's first administrative hearing in January 2004 and her second in December 2004, Scott was admitted to the hospital for nearly a month for renal failure in April 2004.

During her first administrative hearing on January 20, 2004, Scott testified although her medications helped her asthma, diabetes, high blood pressure and sleep apnea, she felt she could not work because of her many leg, knee, and back problems.  During a typical week as a clerk, Scott would spend three days in the office and two days in the field.  In the field, she would spend one to two hours on her feet walking and the remainder in the car.  At the office, she would spend the day on her computer.  She complained office work was difficult because of the cold temperatures, her inability to sit for the whole eight hours, needing to stand and walk periodically, and the computer exacerbated her vision problems.  She stated she suffered from fatigue and ongoing leg pain requiring her to extend her legs during the day.

Since leaving her job, Scott has been living with her daughter and six grandchildren.  She testified she spends her days babysitting, straightening up the house and cooking, and attends church every Sunday.

During questioning by the medical expert Daniel W. Lewis, M.D., Scott testified she took pain medication once every week or two.  Scott stated her left knee bothered her after sitting for too long.  Scott claimed her November 2003 visit to the emergency room was a hospitalization for knee pain and she alleged her knee was drained; no records showed this treatment.  She also told Dr. Lewis her bedroom at home was on the second floor and she did a lot of cooking.  Dr. Lewis concluded Scott had non-insulin dependent diabetes without end-organ damage, a history of hypertension, evidence of mild to moderate left ventricular hypertrophy with a normal left

5

ventricular ejection and discogenic disease of the lower lumbar spine with no significant spinal stenosis or disc herniation.  Dr. Lewis also noted no records of acute asthma attacks, a reliable measure of her pulmonary function, or ischemic cardiac problems.  Dr. Lewis attributed Scott's shortness of breath to a combination of hypertension, some degree of left ventricular hypertrophy, and obesity.  He concluded her conditions neither met nor equaled any listings in the Regulations during any time period.

Dr. Lewis also found Scott would probably be limited to a combination of sedentary work with a sit/stand option and lifting and carrying up to ten pounds.  He noted no indication her medications could be intolerable and any edema in her legs caused by prolonged sitting was normal. In response to Scott's attorney's questioning, Dr. Lewis testified Scott's obesity exacerbated her lower back and knee pain and aggravated her symptoms of shortness of breath.  Dr. Lewis found nothing in her record preventing Scott from doing sedentary work on a sustained basis, provided she was given a sit/stand option.  He noted this was especially true in light of her testimony concerning her daily activities.

At the second administrative hearing on December 30, 2004, Dr. Lewis testified about Scott's recent medical records from Temple University Hospital, showing Scott's chronic renal failure caused by her diabetes and deep venous thrombosis.  He testified her record continued to show evidence of degenerative joint disease of the left knee, obesity, relatively mild obstructive sleep apnea, and degenerative disk disease of the spine.  Dr. Lewis stated from April through July 2004, Scott's conditions equaled Listing 6.02C4 for impairment of renal function.  Scott declined to testify at this hearing.

On February 22, 2005, the ALJ issued a second decision regarding Scott's application. Pursuant to 20 C.F.R. § 404.1520, the ALJ applied the five-step sequential evaluation process to

determine Scott's eligibility for disability benefits.[2]  After determining Scott had not engaged in any

substantial gainful activity since her alleged onset date, he divided his opinion into two time periods:

(1) before April 14, 2004 and (2) from April 14, 2004 forward.  For the first time period, the ALJ

found Scott's diabetes mellitus, asthma, and sleep apnea to be non-severe under the regulations.  20

C.F.R. §§ 404.1520(c) and 416.920(b).  Although he found her impairments of hypertension, back

disorders, degenerative joint disease of the left knee, and her obesity to be severe at step two of the

analysis, he concluded these impairments were not disabling at step three because the impairments

did not meet any listing in Appendix 1, Subpart P of Part 404 of the Regulations.  At step four of

the analysis, the ALJ found Scott retained the residual functional capacity to perform sedentary work

with a sit/stand option and determined her testimony to be less than credible.  The RFC assessment

was consistent with the requirements of her past relevant work as a real estate clerk; thus, the ALJ

concluded Scott was not disabled.  From April 14, 2004 forward, however, the ALJ agreed with the

---

[2] If a claimant cannot be determined to be disabled or not disabled at any step in the sequential evaluation process, the Commissioner will proceed to the next step, as follows:

> (i) At the first step, a claimant is not disabled if he or she is doing substantial gainful activity.
> (ii) At the second step, a claimant is not disabled if he or she does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement.
> (iii) At the third step, a claimant is disabled if he or she has an impairment(s) that meets or equals one of those listed in Appendix 1 of Subpart P of  20 C.F.R. § 404, and meets the duration requirement.
> (iv) At the fourth step, a claimant is not disabled if he or she can still do past relevant work, based on the Commissioner's assessment of the claimant's RFC.
> (v) At the fifth and last step, a claimant is disabled if, based on the Commissioner's assessment of the claimant's RFC [residual functional capacity], age, education, and work experience, the claimant cannot make an adjustment to other work.

20 C.F.R. § 404.1520(a)(4).

opinion of the medical expert Scott's renal failure equaled Listing 6.02C4 beginning on April 14, 2004 and determined Scott was disabled as of that date. At issue in this appeal is the denial of disability from June 24, 2002 to April 14, 2004.

**DISCUSSION**

This Court is bound by the ALJ's factual findings supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). It represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)).

To be considered disabled, Scott must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Scott would be considered unable to engage in any substantial gainful activity "if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Scott first argues the ALJ improperly found her diabetes mellitus to be non-severe. Step two of the sequential evaluation places the burden on the claimant to show the impairment's severity. Under 20 C.F.R. § 404.1520(c), a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work

8

activities."  An impairment is severe when it is "of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities.*" *Santise v. Schweiker*, 676 F.2d 925, 927 (3d Cir. 1982).  Basic work activities include: physical  functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and work situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

Scott argues  the hospitalization in October 2001, her eye sight deterioration, and her fatigue demonstrate the severity of her diabetes impairment.  Scott does not meet the standard because she failed to demonstrate her impairments significantly limited her ability to perform basic work activities.  A single hospitalization does not significantly interfere with work, and although her medical records show early diabetic retinopathy, her only consultation with an ophthalmologist yielded no exertional limitations and no follow-up treatment other than a note for an appointment in one year.  Scott offered no evidence her fatigue or diabetes limited her ability to perform basic work activities.  The ALJ properly found Scott's impairment of diabetes mellitus was non-severe.[3]

Scott argues the ALJ improperly considered whether Scott's combination of impairments matched any of the listings in appendix 1 of subpart P of the regulations.  *Burnett v. Commissioner of Social Security Administration*, 220 F. 3d 112 (3d Cir. 2000).  The Third Circuit has found an ALJ must provide a sufficient framework of reasoning for a court to conduct a meaningful judicial review

---

[3] Even the combination of Scott's maladies will not establish disability when she has been unable to show life impairment.  *Finkelstein v. Sullivan*, 924 F.2d 483, 489 (3d Cir. 1991) (holding "even though no individual ailment qualifies her for benefits under the listings, the Secretary must examine whether the [claimant's] residual capacity permits her to perform any gainful activity").

of the ALJ's decision. *Poulos v. Commissioner of Social Security*, 474 F.3d 88, 93 (3d Cir. 2007)

(citing *Burnett*, 220 F.3d at 119). The *Burnett* requirements are satisfied when the ALJ issues the

step three determinations after reviewing all of the objective medical evidence and explicitly states

the listings considered. *Poulos*, 474 F.3d at 93. Here, the ALJ reviewed all the objective medical

evidence and specifically stated the listings he considered at step three of the analysis.

Scott argues the ALJ failed to consider the specific listings for kidney function and diabetes,

but Scott failed to show any impairment meeting the specified medical criteria for these listings.

"[A]n impairment that manifests only some of [the] criteria, no matter how severely, does not

qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Scott does not meet all of the criteria of

Listings 6.02,[4] 6.06[5] or 9.08,[6] including dialysis, transplant, high levels of serum creatinine, protein

---

[4] Relevant section reads:

Impairment of renal function, due to any chronic renal disease that has lasted or can be expected to last for a continuous period of at least 12 months, with:

A. Chronic Hemodialysis or Peritoneal Dialysis (see 6.00E1); or

B. Kidney Transplantation. Consider under disability for 12 months following surgery; thereafter, evaluate for residual impairment (see 6.00E2); or

C. Persistent evaluation of serum creatinine to 4mg per deciliter (dL) (100 ml) or greater or reduction of creatinine clearance to 20 ml per minute or less, over at least three months, with one of the following:

    1. Renal Osteodystrophy manifested by severe bone pain and appropriate medically acceptable imaging demonstrating abnormalities such as osteitis fibrosa, significant osteoporosis, osteomalacia, or pathologic fractures (see 6.00E3); or

    2. Persistent motor or sensory neuropathy (see 6.00E4); or

    3. Persistent fluid overload syndrome with:

        a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg; or

        b. Persistent signs of vascular congestion despite prescribed therapy (see 6.00B5); or

        c. Persistent anorexia with recent weight loss and current weight meeting the values in 5.08, table III or IV.

20 C.F.R. § 404, Subpt. P, App. 1, § 6.02.

[5] Relevant section reads:

Nephrotic Syndrome, with anasarca, persisting for at least three months despite described

greater than three grams.  Such criteria is required for the ALJ to find a disability at step three of the analysis.

Scott further argues the ALJ rejected her treating physician's opinion without adequate explanation.  Generally, the findings and opinions of treating physicians should be given substantial, and, at times, controlling weight, 20 C.F.R. § 404.1527(d)(2); *Rutherford*, 399 F.3d at 554 (citing *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993), especially "when their opinions reflect expert judgment . . . . over a prolonged period of time."  *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).  The weight given to these opinions, however, depends upon the extent the opinions are supported by medically acceptable clinical and laboratory diagnostic techniques and other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984).  An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence," *Plummer*, 186 F.3d at 429, or if unsupported by medical data.  *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985);

---

therapy (see 6.00E5) with:
A. Serum albumin of 3.0 g per dL (100 ml) or less and proteinuria of 3.5 g or greater per 24 hours; or
B. Proteinuria of 10.0 g or greater per 24 hours.

20 C.F.R. § 404, Subpt. P, App. 1, § 6.06(A)-(B).
[6] Relevant section reads:
Diabetes Mellitus requires the following:
A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
B. Acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests (pH or pCO2 or bicarbonate levels); or
C. Retinitis proliferans; evaluate the visual impairment under the criteria in 2.02, 2.03, or 2.04.

20 C.F.R. § 404, Subpt. P, App. 1, § 9.08(A).

*See Clements v. Apfel*, 76 F.Supp 2d. 599, 603 (E.D. Pa. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (holding "[t]he ALJ need not accept an opinion of a physician – even a treating physician – if it is conclusionary and brief and is unsupported by clinical findings.")).

I find the ALJ properly explained his reasons for affording more weight to the state medical experts than to the opinion of Scott's treating physician, Dr. Phelan.  The ALJ noted "the record fails to provide any objective medical evidence that the claimant's impairments are as severe as her testimony indicates.  The record fails to show significant active treatment or significant office care other than for limited routine maintenance, and there have been no significant increases or changes in prescribed medications reflective of an uncontrolled condition.  The record indicates only limited and conservative treatment of her impairments and only one hospitalization in October 2001, for hyperglycemia."[7]  (R.  18).  The ALJ found Scott's daily activities of helping raise her young grandchildren, babysitting, cooking, straightening up the home, and regularly attending church "undermine the level of work related impairments alleged." (R. 19).  The ALJ's conclusions accord with the record's facts.

Dr. Whelan only indicated Scott's inability to work in the public schools was due to "above diagnoses."  (R. 120).  No evidence showed Dr. Phelan knew the exertional requirements of her clerk position, and he failed to specify from what work Scott was disabled.  Significantly, according to the regulations, "a statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled."  20 C.F.R. § 404.1527(e)(1).  Form reports amount to weak evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993).  In contrast, the state medical physicians agreed the objective medical record supported a finding Scott was able to

---

[7] The ALJ referred to her diagnosis as hyperglycemia, which is high blood sugar.  Scott was diagnosed with hypoglycemia, which is low blood sugar.

perform sedentary work with a sit/stand option as long as lifting and carrying was limited to 10 pounds.  Their opinions were based upon a thorough review of the record and a "familiarity with Social Security Rules and Regulations." (R. 19).  The ALJ properly granted more weight to the state medical physicians rather than to the Dr. Phelan's form report.

Scott also asserts the ALJ failed to adequately consider the implications of PSERS's disability retirement.  The regulations specifically provide that disability determinations made by other agencies are not binding on the Social Security Administration.  20 C.F.R. § 404.1504.  The PSERS's decision did not bind the ALJ.  Although the Third Circuit found another government agency's disability determination is entitled to substantial weight, the ALJ may properly reject another agency's findings if he/she explains his/her decision.  *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985).  The ALJ determined PSERS's explanation of Scott's benefits demonstrated a different standard for disability than that of the Social Security Administration.  Unlike the Social Security Administration, which requires a "disabled" person to be disabled from all work,  PSERS does not preclude a person from working or find a person disabled from all work.  PSERS only requires while the person is receiving benefits, he or she must refrain from working in a Pennsylvania public school.  The ALJ also found the PSERS form lacked description of Scott's past work and assessment of her work's exertional requirements, the standard the Social Security Administration applies.  The ALJ adequately explained its decision to decline to give the PSERS's determination substantial weight.

Scott also argues the ALJ failed to adequately explain his rejection of her testimony.  The ALJ found Scott's subjective complaints of pain, fatigue, and shortness of breath not fully credible and not supported by medical evidence.  The Social Security Regulations require allegations of pain and other symptoms to be supported by objective medical evidence.   20 C.F.R. § 404.1529.

Although the Third Circuit has found an ALJ is required to "give serious consideration to a claimant's subjective complaints . . . even where those complaints are not supported by objective evidence," *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993), there must be objective evidence of some condition that could reasonably produce the symptoms. *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir. 1984). If an ALJ concludes the objective medical evidence could reasonably cause the alleged symptoms, the ALJ must evaluate the severity of the claimant's pain as well as the degree it may limit the claimant's ability to perform various types of work. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

Social Security Rules provide the ALJ guidance in performing credibility determinations. SSR 96-7p, 1996 WL 374186, *3 (S.S.A. 1996). The Rule asks the ALJ to consider "the degree to which the individual's statements are consistent with medical signs and laboratory findings and other information provided by medical sources, including information about medical history and treatment." *Id* at *5. An individual may be deemed less than credible "if the level or frequency of treatment is inconsistent with the level of complaints or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." *Id.* Ultimately, the ALJ's decision must contain specific reasons and substantiated evidence in the case record for the credibility finding. *Schwartz v. Halter*, 134 F. Supp. 2d 640, 654 (E.D. Pa. 2001).

The ALJ first assessed whether the objective medical findings and evidence could have reasonably produced Scott's alleged subjective symptoms. While he determined Scott had "underlying medically determinable impairments that could reasonably be expected to result in some of the symptoms as alleged," the ALJ concluded "the record fail[ed] to provide any objective medical evidence that the claimant's impairments are as severe as her hearing testimony." (R. 18.)

14

In finding Scott partially credible, the ALJ considered the entire record, including: her medical records; her testimony; and the state agency physicians' and medical expert's conclusions.

Scott's testimony and the conclusions of the state agency physicians and medical expert undermined Scott's subjective complaints. Scott testified her daily life activities included helping care for young children, straightening the home, cooking, and attending church regularly . The ALJ justifiably found these activities undermined the level of alleged work-related impairments. Finally, the findings of the state agency physicians and the medical expert were inconsistent with Scott's subjective complaints. Apart from listing Scott's already known diagnoses, Dr. Azarva's findings were relatively unremarkable, finding trace edema in her extremities and positive straight leg raises. He found her motor strength in her upper and lower extremities and normal and she had a normal gait. In his Residual Function Capacity (RFC) assessment, Dr. Gryczko found Scott could stand and walk at least two hours in an eight-hour day and could sit about six hours in an eight-hour day, contradicting Scott's testimony. Finally, following his review of her medical record and after listening to Scott's testimony, Dr. Lewis concluded there was nothing in her record indicating Scott could not perform sedentary work on a sustained basis, provided she was given a sit/stand option. The ALJ's assessment of Scott's credibility was based on a thorough review of her complaints and the contradictions are supported by substantial evidence in the record.

Scott argues the ALJ's RFC assessment failed to comply with the remand order. This Court cannot review this argument. Under 42 U.S.C. § 405(g), this Court's jurisdiction extends only to the Commissioner of Social Security's final decision, which in this case is the ALJ's second decision, not the Appeals Council's remand. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992).

Finally, Scott argues the ALJ's RFC assessment was inadequate. Based on the objective

15

medical evidence, including a review of the plaintiff's treatment notes, Dr. Phelan's form report to the PSERS, Dr. Azarva's consultative examination, Dr. Gryzcko's RFC assessment, and Dr. Lewis's medical expert testimony, the ALJ concluded prior to April 14, 2004 Scott retained the RFC to stand/walk two hours out of an eight hour day, sit six hours out of an eight hour day with a sit/stand option, and lift/carry no more than ten pounds frequently, consistent with the exertional requirements of her past work as a real estate clerk based on Scott's own description of her work activities.   The ALJ's conclusions regarding the RFC assessment were based upon substantial evidence.

In sum, this Court finds no grounds on which to reverse the ALJ's February 22, 2005 decision.   An appropriate order follows.